UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: LOUISIANA CENTRAL            CIVIL ACTION
CREDIT UNION
                                    No. 18-2079

                                    SECTION I

## ORDER & REASONS

Before the Court is an appeal filed by Louisiana Central Credit Union ("LCCU") from a partial judgment of the United States Bankruptcy Court in favor of debtor Byron Stewart ("Stewart") and against LCCU.[1] The bankruptcy court held that Stewart was entitled to discharge his debt pursuant to 11 U.S.C. § 727 and that LCCU's allegations that Stewart's debt was nondischargeable pursuant to 11 U.S.C. § 523(a) were not substantially justified. For the following reasons, the bankruptcy court's judgment is affirmed.

### I.

Stewart has had an outstanding loan with LCCU since 2006.[2] Before this dispute, he was paying off the loan through weekly debits against his wages in accordance with LCCU's policy.[3] Stewart has refinanced the loan several times.[4] He has never been in default on his loans with LCCU.[5]

---

[1] R. Doc. No. 2, at 46.
[2] *Id.*
[3] *Id.* at 48; R. Doc. 2-2, at 147–48. Stewart's weekly paychecks were deposited directly into his account at LCCU.
[4] R. Doc. No. 2, at 48.
[5] *Id.*

In February 2017, Stewart sought to refinance his outstanding loan and receive a $2,000 advance above the balance.[6] Stewart told the loan officer—an LCCU employee who had worked with Stewart before—that he intended to use the loan to pay down other debts he owed.[7] After reviewing Stewart's credit report, LCCU granted him the loan (the "February loan").[8] The balance due on Stewart's existing loan with LCCU was $1,754.21.[9] After paying off that balance with the February loan, Stewart ultimately received approximately $500.00.[10]

Two months later, in April 2017, one of Stewart's other creditors filed a lawsuit against him.[11] Stewart hired counsel and ultimately filed for chapter 7 bankruptcy.[12] Between the February loan's inception and Stewart's bankruptcy filing in April, he made nine payments to LCCU, one payment each week. Additionally, on his summary of assets and liabilities form, he listed LCCU as an unsecured creditor.[13]

LCCU filed a motion in the bankruptcy proceeding objecting to the discharge of Stewart's debt, and the bankruptcy court instructed it to file an adversary proceeding in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure.[14] As a result, in August 2017, LCCU filed the present complaint for

---

[6] *Id.*
[7] *Id.* at 48–49.
[8] *Id.* at 49.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. No. 2-3, at 26.
[14] R. Doc. No. 2, at 50. Rule 7001 explains that "a proceeding to object to . . . a discharge, other than an objection to discharge under §§ 727(a)(8), (a)(9) or 1328(f)[,]" is an adversary proceeding. Fed. R. Bankr. P. 7001.

nondischargeability of debt against Stewart, in which it sought to deny him a discharge pursuant to 11 U.S.C. § 727 or to make his debt dischargeable pursuant to 11 U.S.C. § 523(a).[15]

Following a trial, the bankruptcy court entered judgment in favor of Stewart and against LCCU. First, the court held that Section 727 did not prevent Stewart from discharging his debt.[16] Second, the court found that LCCU did not meet its burden of proving that Stewart obtained the loan by false pretenses or representations or by committing actual fraud.[17] It also held that LCCU did not prove willful or malicious injury.[18] The court concluded that Stewart's debt was dischargeable because it did not fall under a Section 523(a) exception.[19] On appeal, LCCU only disputes the bankruptcy court's finding as to Section 523(a), arguing that the court erred in holding that the debt was dischargeable.[20]

## II.

This Court's jurisdiction to review the bankruptcy court's judgment derives from 28 U.S.C. § 158(a)(1). "[C]onclusions of law are reviewed *de novo,* findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de*

---

[15] "The bankruptcy code requires discharge of the debt unless a statutory exception applies." *In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009). Section 727 sets forth several conditions for discharge, and Section 523 sets forth exceptions. *See generally* 11 U.S.C. §§ 523(a), 727.
[16] *Id.* at 51.
[17] *Id.* at 53.
[18] *Id.*
[19] *Id.* at 54.
[20] R. Doc. No. 4, at 7. LCCU does not contest the bankruptcy court's holding that Stewart's debt was dischargeable pursuant to Section 727.

3

*novo.*" *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Matter of Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992)). The creditor has the burden of proving that its claim is nondischargeable by a preponderance of the evidence. *Matter of Selenberg*, 856 F.3d 393, 397 (5th Cir. 2017) (quoting Grogan *v. Garner*, 498 U.S. 279, 287 (1991)). The district court must give deference to the bankruptcy court's determinations of witness credibility. *In re Duncan*, 562 F.3d at 695.

Section 523(a)(2)(A) of the Federal Bankruptcy Code provides that a debtor cannot obtain a bankruptcy discharge from a debt for money "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). A debtor's representation amounts to a false representation or pretense if it was "(1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995), *overruled on other grounds as recognized by Matter of Ritz*, 832 F.3d 560 (5th Cir. 2016). "[A] misrepresentation need *not* be spoken." *In re Mercer*, 246 F.3d 391, 494 (5th Cir. 2001). To prove actual fraud, the Fifth Circuit has explained that a creditor must show:

> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.

4

*Selenberg*, 856 F.3d 393 at 398.[21] LCCU does not articulate whether it argues that Stewart's debt is nondischargeable under a false pretenses or representation theory or an actual fraud theory. Regardless, its arguments fail.

LCCU contends that Stewart's debt is nondischargeable under Section 523(a)(2)(A) because Stewart promised to repay the debt he incurred through the February loan, but then he filed for bankruptcy less than sixty-two days later.[22] What LCCU does not explain is *why* the fact that Stewart filed for bankruptcy two months after it granted him the February loan satisfies its burden of demonstrating that he obtained such loan by a false representation or pretense or through actual fraud. LCCU merely argues that Stewart "represented an intention to repay the loan" when he "was fully aware he was not planning to pay."[23]

LCCU has failed to specifically identify evidence demonstrating that Stewart obtained the February loan improperly. To the contrary, evidence was presented at trial showing that Stewart made nine weekly payments on the February loan, starting from when he obtained the loan up until the date he filed for bankruptcy in April 2017.[24] According to the bankruptcy court's findings, at the time Stewart made

---

[21] The United States Supreme Court recently held that actual fraud also "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586.
[22] R. Doc. No. 4, at 6.
[23] *Id.*
[24] The fact that Stewart "attempted to pay back the loan over two months" by making "nine (9) separate payments . . . prior to filing bankruptcy [sic]" is uncontested, as shown by the joint pretrial order submitted to the bankruptcy court. R. Doc. No. 2, at 34 (joint pretrial order's statement of uncontested material facts).

5

the promise to pay LCCU, he did in fact intend to pay. The bankruptcy court also found that Stewart was not contemplating filing for bankruptcy at the inception of the loan, and LCCU has failed to identify *any* evidence in the record demonstrating otherwise.

When Stewart requested the February loan, he disclosed to the loan officer that he needed it to pay off other debts he owed.[25] The loan officer reviewed Stewart's credit report, which confirmed that Stewart was past due on several other loans.[26] Additionally, the loan officer testified at trial that she knew the amount LCCU eventually loaned Stewart would be insufficient to pay off the debts he owed the other creditors.[27] The bankruptcy court found that she nonetheless approved Stewart for a loan because she knew he was a longtime customer and she wanted to help him.[28] At trial, the loan officer testified that, at the time she approved him for the February loan, she had no reason to believe that Stewart had any intention not to repay it.[29]

LCCU also makes a new argument: that Stewart "made statements about taking care of paying debts which was the reason for the loan, however [in] his own testimony he revealed that the amount he borrowed was used for different purposes than what was stated to the loan officer."[30] LCCU does not specify what purposes conflict with what Stewart told the loan officer. However, this Court will not "consider

---

[25] *Id.* at 52.
[26] *Id.*
[27] R. Doc. No. 2-2, at 144–45.
[28] R. Doc. No. 2, at 49.
[29] R. Doc. No. 2-2, at 151.
[30] R. Doc. No. 4, at 6.

6

arguments or claims not presented to the bankruptcy court." *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001) (quoting *Matter of Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990)). The bankruptcy court did not have the opportunity to consider such argument. The Court, therefore, considers it waived on appeal.

Alternatively, such argument is directly refuted by LCCU's own witness at trial. The loan officer testified that Stewart said "[h]e needed to borrow money to help pay some debt."[31] When asked whether he specified which debts he needed the money to pay off, she answered, "No."[32]

### III.

LCCU's only basis for arguing that Stewart's debt should be nondischargeable under Section 523(a) is that he filed for bankruptcy two months after he was approved for the February loan. This bare and conclusory allegation is woefully insufficient to satisfy LCCU's burden of proving by a preponderance of the evidence that Stewart's debt is nondischargeable. After a thorough review of the record and the parties' briefs, the Court has no definite and firm conviction that a mistake was committed with respect to any finding of fact. Nor is the Court concerned that there was any error as to questions of law and/or mixed questions of fact and law. The bankruptcy court correctly concluded that LCCU failed to prove that Stewart's debt fell within the

---

[31] R. Doc. No. 2-2, at 142.
[32] *Id.*

7

ambit of a Section 523(a) exception. Therefore, the bankruptcy court correctly concluded that Stewart's debt was dischargeable.[33]

## IV.

Accordingly, the bankruptcy court's partial judgment in favor of Byron Stewart and against Louisiana Central Credit Union is **AFFIRMED.**

New Orleans, Louisiana, September 17, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[33] Although the headings in LCCU's brief suggest that it intended to make an argument as to Section 523(a)(6), which provides an exception for the discharge of a debt "for willful and malicious injury by the debtor to another entity," 11 U.S.C. § 523(a)(6), it never does. It merely mentions Section 523(a)(6) in its summary of the applicable law and incorrectly paraphrases the provision as stating that "a debt incurred by a debtor who engages in fraud and deceit shall be deemed nondischargeable." R. Doc. No. 4, at 5. Regardless, any such argument is rejected for reasons set forth in the bankruptcy court's memorandum opinion on partial judgment. *See* R. Doc. No. 2, at 53–54.